IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ANTHONY D. CRAFT,                )
                                 )
        Plaintiff,               )
                                 )
        v.                       )     1:16cv86(JCC/MSN)
                                 )
FAIRFAX COUNTY GOVERNMENT,        )
                                 )
        Defendant.               )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motion to Dismiss.  [Dkt. 8]  For the following reasons, the Court grants Defendant's motion to dismiss and dismisses Plaintiff's Complaint [Dkt. 1] without prejudice.

**I. Background**

At the motion to dismiss stage, the Court must read the complaint as a whole, construe the complaint in the light most favorable to the plaintiff, and accept the facts alleged in the complaint as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facts below are taken from Plaintiff's Complaint and the attached documents.[1]

Plaintiff Anthony Craft ("Craft" or "Plaintiff") was

---

[1] For ease of reference, attached documents are referenced by the exhibit number assigned them by Defendant.  However, all of Defendant's exhibits are drawn from the over 1,300 pages of documents attached to Plaintiff's complaint.

employed by the Fairfax County Fire and Rescue Department ("FRD") as a firefighter until July 31, 2015. (Compl. at 1, 3.) On August 22, 2013, Craft suffered a work related back injury while performing his duties as a firefighter. (*Id.*) After Craft visited several physicians, Defendant Fairfax County ("the County" or "Defendant") accepted Craft's claim as compensable pursuant to the Virginia Workers' Compensation Act through its workers' compensation claims administrator, Corvel. (*Id.* at 1, 2; Ex. 1.)

On May 19, 2014, after a series of medical procedures including two epidural injections and back surgery for a slipped disc, Craft received a memorandum from FRD documenting that he had been unable to perform his duties as a firefighter for over nine months. (Compl. at 2; Ex. 2; Ex. 3.) That memorandum referenced FRD's Standard Operating Procedure 02.03.06, which provides FRD employees such as Craft one calendar year to return to full duty. (Ex. 3.) Employees who are unable to perform their job duties after that time period are subject to separation from the FRD. (*Id.*) That same memorandum presented Craft with six options moving forward if he was unable to return to full duty. (Compl. at 2; Ex. 3.) Craft was notified that if he was unable to return to full duty by August 22, 2014, the FRD could begin the process for his involuntary separation. (Ex. 3.) Craft ultimately chose to

pursue referral to the Uniformed Retirement Board for service connected disability retirement and notified the FRD of that choice via memorandum on July 30, 2014.  (Compl. at 2; Ex. 4.) The Retirement Administration Agency ("Retirement Agency"), a County agency, received Craft's application for disability retirement on August 5, 2014.  (Compl. at 2; Ex. 5.)  The Retirement Agency informed Craft in writing that his application would be referred to its Medical Examining Board ("Medical Board") which would consider his application and make recommendations to the Retirement Agency's Board of Trustees ("Retirement Board").  (*Id.*)  The Retirement Board would ultimately be responsible for determining whether Craft was eligible for disability retirement. (*Id.*)  On August 7, 2014, the Retirement Agency requested a copy of Craft's workers' compensation file and a statement of compensability from the County's Risk Management Division ("Risk Management"). (Ex. 6.) In its October 15, 2014 response, Risk Management indicated that while the County had accepted Craft's workers' compensation claim and compensable, there were differing medical opinions as to Craft's ability to return to work once he reached maximum medical improvement, which was anticipated to occur by December 1, 2014. (*Id.*)  Ultimately, Risk Management made no recommendation as to whether Craft qualified for service-connected disability retirement.  (*Id.*)

3

On March 3, 2015, in response to a request from Craft for a copy of his disability file, the Retirement Agency informed Craft that the Medical Board was waiting for him to send them additional medical documentation. (Ex. 7.) Attached to the Retirement Agency's March 3, 2015 letter was a letter dated January 26, 2015, in which the Retirement Agency informed Craft that the Medical Board could not make recommendations on his case to the Retirement Board until it had information concerning whether Craft had reached maximum medical improvement from his injury. (*Id.*) The January 26, 2015 letter instructed Craft to complete a functional capacity evaluation in order to provide the Medical Board with needed information concerning his physical capabilities and limitations once he reached maximum medical improvement. (*Id.*)

On March 27, 2015, FRD notified Craft that he was nearing the end of the maximum allowable hours of injury leave that the County would permit for his back injury pursuant to Fairfax County Personnel/Payroll Administration Policies and Procedures Memorandum number 23 Section 3 (3.7). (Ex. 8.) Craft was informed that after the exhaustion of his allotted injury leave on April 9, 2015, he would be able to use his own personal leave until that leave was exhausted. (*Id.*) Craft was further informed that upon exhaustion of his personal leave balances, Craft would be placed on leave without pay and would

4

no longer receive a paycheck from the County.  (*Id.*)

On April 21, 2015, FRD employee Dwayne Harman, Craft's case manager, informed Craft that the Medical Board was still awaiting documentation of whether Craft had reached maximum medical improvement, and a copy of a functional capacity evaluation before it could reach a decision on his disability application. (Ex. 9.)

On May 28, 2015, Craft participated in a functional capacity evaluation, which resulted in the issuance of a summary and recommendations for Craft's return to employment.  (Ex. 11.) The summary suggested that Craft could return to employment with the county either in a position with a light physical demand level or after participation in a work conditioning program that had the potential to increase his ability to work in a position with physical demands.  (*Id.*)  On June 26, 2015, Craft received a memorandum from FRD proposing separation of employment due to Craft's failure to return to full duty, and the lack of a foreseeable return to duty within the time allowed by County policy.  (Ex. 12.)  On July 23, 2015, Fire Chief Richard Bowers approved Craft's separation from service due to his ongoing medical condition.  The effective date of Craft's separation was July 31, 2015.  (Ex. 13.)

After Craft was separated from employment by the County, his application for disability retirement remained

before the Retirement Board.  Throughout this time Craft
continued to seek a variety of treatments from several different
physicians.  An Independent Medical Examination ("IME") was
performed on Craft by a Dr. Dhruv B. Prateder.  (Ex. 14.)  Dr.
Prateder concluded that there was no objective medical finding
that would explain Craft's complained of symptoms, and that
there was no medical reason that Craft's back injury prevented
him from working.  (*Id.*)  On October 2, 2015, after receiving
Dr. Prateder's opinion, the Medical Board issued a report to the
Retirement Board containing its findings, and its conclusion
that Craft was not incapacitated or unable to perform his job
duties.  (Ex. 15.)  Craft and his wife attended a meeting of the
Retirement Board on October 21, 2015, where Craft presented
evidence as to his injury and his asserted disability.  (Compl.
at 3.)  On December 16, 2015, Craft was notified that the
Retirement Board had denied his application for disability
retirement.  (Ex. 16.)  Craft has appealed the Retirement Board's
decision.  (Compl. at 3.)

        Craft has filed two complaints with the Equal
Employment Opportunity Commission ("EEOC") related to his
employment with the FRD.  Craft's first charge, filed April 10,
2015, alleged that he had been discriminated against by the
Retirement Agency's delay in considering his application due to
his race, sex, and disability.  (Compl. at 2; Ex. 17.)  On

October 27, 2015, the EEOC determined that the charge did not establish a violation of anti-discrimination statutes, and issued Craft a right-to-sue letter. (Ex. 18.) Craft's second charge, filed September 11, 2015, contends that his separation from employment with the County was in retaliation for his first EEOC charge. (Compl. at 3.) Craft's complaint does not allege that has received, or that he is entitled to, a right-to-sue letter associated with his September 11, 2015 EEOC charge.

Craft's complaint alleges that he was discriminated against by Fairfax County Government in violation of the Americans with Disabilities Act ("ADA") 29 U.S.C. § 623(a)(1), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Defendant filed the instant motion to dismiss the case for lack of jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. The motion has been fully briefed and argued and is now ripe for decision.

## II. Legal Standard

Defendant moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant asserts that this Court lacks subject matter jurisdiction over the Plaintiff's retaliation claim stemming from his separation from employment because Plaintiff has yet to exhaust his administrative remedies before the EEOC. In employment

discrimination claims, "[r]eceipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995); *See also McInnis v. N.C. Dep't of Env. And Nat'l Res.*, 223 F.Supp.2d 758 (M.D.N.C. 2002)(jurisdictional prerequisites must be satisfied in an ADA discrimination claim.)  Where the complaint does not allege that the plaintiff has satisfied the jurisdictional prerequisite to filing suit, the plaintiff has not properly invoked the Court's jurisdiction. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Entitlement to an EEOC right to sue letter is triggered 180 days after the date on which the EEOC charge is filed. *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982).

        "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (citation omitted) (internal quotation marks omitted).  While the court must accept well-pleaded allegations as true when ruling on a Rule 12(b)(6) motion, the court need not accept as true legal conclusions disguised as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009).  Therefore, a

8

pleading that offers only a "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. In the context of discrimination claims, "while a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, *see Swierkeiwicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002), '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012)(quoting *Twombly*, 550 U.S. at 555). In the instance where sufficient facts are alleged in the complaint to rule on an affirmative defense, such as the statute of limitations, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint*." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (emphasis in original); *see also* 5B Wright & Miller, Federal Practice & Procedure § 1357.

In considering a motion to dismiss, a court is limited to considering the pleadings, documents attached to the pleadings, documents integral to, relied on, or referenced to within the pleadings, and official public records pertinent to the plaintiff's claims. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

### III. Analysis

Plaintiff had not received, nor was he entitled to, an EEOC right to sue letter on his second EEOC charge when he initially filed this action.  He became entitled to a right to sue letter from the EEOC on that charge on March 9, 2016. Because Plaintiff had not received, nor was he entitled to, a right to sue letter when he filed his complaint, his retaliation claim must be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction.

However, by the time Defendant's motion to dismiss became ripe for decision, Plaintiff was entitled to a right to sue letter on his second EEOC charge.  Because Plaintiff could easily amend his complaint to now bring his retaliation claim within the jurisdiction of this Court, and *pro se* complaints are "to be liberally construed", the Court will examine the substance of Plaintiff's retaliation claims stemming from his

10

separation under the Rule 12(b)(6) standard as well as those
stemming from his earlier charge. *Erickson v. Pardus*, 551 U.S.
89, 94 (2007)(quoting *Estelle v. Gamble*, 429 U.S. 97, 106
(1976)); *see also Settlers Crossing, L.L.C. v. U.S. Home Corp.*,
383 F. App'x 286, 288 (4th Cir. 2010) (affirming district
court's finding of lack of subject matter jurisdiction and
alternative dismissal on the merits); *Foxworth v. United States*,
No. 3:13-cv-291, 2013 WL 5652496, at *4-6 (E.D. Va. Oct. 16,
2013) ("Accordingly, even if the Court found jurisdiction to be
proper, Foxworth's Complaint fails to state a claim upon which
relief can be granted.").

A.      Plaintiff's Claims stemming from the April 10, 2015
        EEOC Charge

        In his April 10, 2015 EEOC charge Plaintiff claimed
that Defendant was intentionally delaying his application for
retirement and medical coverage in violation of Title VII and
the ADA.  In order to survive a motion to dismiss on a
discrimination claim under either Title VII or the ADA, the
plaintiff need only allege facts which establish the
plausibility of the alleged discrimination. *Coleman*, 636 F.3d
at 190.  Plaintiff need not plead facts sufficient to constitute
a prima facie case under the burden-shifting framework of
*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-805 (1973),
but courts may look to the requirements of a prima facie case as

a guide in assessing the plausibility of plaintiff's claim for relief. *See Coleman,* 636 F.3d at 190 (reciting elements of a prima facie case under *McDonnell Douglas* en route to affirming dismissal for failure to state a claim). While the *McDonnell Douglas* framework was developed in the context of Title VII claims, it is applied as adapted to "appropriate claims under the ADA." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 58 (4th Cir. 1995).

According to the *McDonnell Douglas* scheme, a Plaintiff must "put forth probative evidence indicating that the employer intentionally discriminated against [him] . . ." through either direct evidence of discrimination, or through circumstantial evidence. *Whitaker v. Titmus Optical Inc.*, 311 F. Supp. 2d 522, 524 (E.D. Va. 2002), *citing McDonnell Douglas Corp.* 411 U.S. at 802-05. Under the *McDonnell Douglas* burden shifting scheme, circumstantial proof requires the plaintiff to make a prima facie case of age discrimination, then "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action" or "but for" causation will be presumed. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (abrogated on other grounds).

1.      Plaintiff's Title VII Claim

In order to establish a prima facie case of discrimination under Title VII, the plaintiff must show

12

"(1)membership in a protected class; (2) satisfactory job performance; (3) adverse employment action [. . .]; and (4) that similarly situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004).  Although Plaintiff here does not allege any facts on the face of his complaint which would establish membership in a protected class, Plaintiff's EEOC charges make clear that Plaintiff is an African-American male.  Therefore Plaintiff is a member of a protected class under Title VII.  However, Plaintiff fails to allege facts which could plausibly show that he had been subjected to an adverse employment action at the time of his April 10, 2015 EEOC charge.

An adverse employment action is a discriminatory act which "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *VonGunten v. Md.,* 243 F.3d 858, 865 (4th Cir. 2001)(quoting *Munday v. Waste Mgmt of N. Am., Inc.,* 126 F.3d 239, 243 (4th Cir. 1997)).  In his April 10, 2015 EEOC charge, Plaintiff alleged only that the Retirement Agency and the Medical Board were impermissibly delaying the processing of his application.  This delay was resolved shortly thereafter, with the Medical Board issuing a recommendation on October 2, 2015 and the Retirement Board issuing their denial of Plaintiff's application on December 16, 2015.  The slight, quickly resolved delay in processing Plaintiff's application for

disability retirement was not an adverse employment action for purposes of Title VII, as it did not adversely affect the terms, conditions, or benefits of Plaintiff's employment.

Construing Plaintiff's *pro se* complaint liberally, it appears that Plaintiff also claims that the Retirement Agency discriminated against him by denying his application for disability retirement.  Although Plaintiff's EEOC charge did not explicitly allege discrimination through denial of his application for disability retirement, his claim of discrimination by the later denial of his application on December 16, 2015 is "reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation." *Syndor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012)(quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).  Therefore, the fact that the December 16, 2015 denial of Plaintiff's application does not appear on, and occurred after filing of the April 10, 2015 EEOC charge does not prevent the Court from addressing the merits of that claim.

However, Plaintiff is also pursuing an internal appeal of the Retirement Agency's denial.  In the analogous context of internal appeals in ERISA claims, the Fourth Circuit has held that a claimant is generally required to exhaust internal administrative remedies before bringing an action in court.  *See*

14

*Makar v. Health Care Corp. of Mid-Atlantic (Carefirst)*, 872 F.2d 80, 82 (4th Cir. 1989).  Plaintiff has appealed the Retirement Agency's denial of his application for disability retirement, and that appeal is still pending.  Plaintiff has not alleged any facts indicating that his appeal will be futile.  Accordingly, because Plaintiff has not exhausted the internal administrative remedies for his claim that the Retirement Agency discriminated against him by denying his application for disability benefits, the Court dismisses any such claim without prejudice pending the resolution of Plaintiff's appeal.

          2.        Plaintiff's ADA Claim

        Turning now to Plaintiff's claim under the ADA, it is unclear whether Plaintiff is pursuing a wrongful termination claim under the ADA, or a failure to accommodate claim under the ADA.  Construing his complaint liberally, the Court will address both potential theories of recovery under the ADA.  To succeed with a claim for wrongful termination under the ADA, a plaintiff must allege facts which establish the plausibility of success either through direct evidence of discrimination or the *McDonnell Douglas* burden shifting scheme.  A prima facie case for wrongful discharge under the ADA requires the plaintiff to show: (1) the plaintiff has a disability; (2) the plaintiff was discharged; (3) at the time of discharge, the plaintiff was performing the job at a level that met his employer's legitimate

expectations; and (4) the plaintiff's discharge occurred under
circumstances that raise a reasonable inference of unlawful
discrimination.  *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702
(4th Cir. 2001); *Ennis v. Nat'l Ass'n of Bus. & Educ.* Radio, 53
F.3d 55, 58 (4th Cir. 1995).  Additionally, the plaintiff must
establish that he is a "qualified individual with a disability."
*Shin v. Univ. of Md. Med. Sys. Corp.*, 369 Fed. App'x 472, 479
(4th Cir. 2010).  A qualified individual with a disability is
"an individual with a disability who, with or without reasonable
accommodation, can perform the essential functions of the
employment position that such individual holds or desires."  *Id.*
(quoting 42 U.S.C. §12111(8)).

        In order to succeed with a claim for failure to
accommodate, a plaintiff must show that (1) he has a disability;
(2) his employer had notice of his disability; (3) he could
perform the essential functions of his job with a reasonable
accommodation; and (4) the employer refused to make such a
reasonable accommodation.  *Wilson v. Dollar Gen. Corp.*, 717 F.3d
337, 345 (4th Cir. 2013).

        Under the facts alleged, Plaintiff cannot plausibly
show that he is a qualified individual with a disability, nor
can he show that he could perform the essential functions of his
job with a reasonable accommodation.  Plaintiff himself contends
in his Memorandum in Opposition of Defendant's Motion to Dismiss

16

that he "will **never** be able to perform duties as a firefighter."
(Pl.'s Mem. in Opp. [Dkt. 12] at 10 (emphasis in original).)
Likewise, Plaintiff's complaint alleges that he "could no longer
perform the job as a firefighter" due to his injury. (Compl. at
2-3.) Plaintiff's contention that he was entitled to disability
retirement is premised on the assertion that he was no longer
physically able to work for Fairfax County, even in a low
physical workload position. Because Plaintiff concedes that he
could no longer perform his duties with or without
accommodations, he cannot make a prima facie case of either
wrongful termination or failure to accommodate under the ADA.
The facts alleged in Plaintiff's complaint and the documents
attached thereto and referenced therein fail to suggest any
plausible inference of discrimination based on Plaintiff's
disability. Accordingly, the Court grants Defendant's motion to
dismiss with respect to Plaintiff's claims stemming from his
April 10, 2015 EEOC charge.

B.       Plaintiff's Claims stemming from the September 11,
         2015 EEOC Charge

         Plaintiff's September 11, 2015 EEOC Charge alleges
that his termination from FRD was an impermissible retaliation
for his initial EEOC charge in violation of Title VII. In order
to succeed with a claim for retaliatory action in violation of
Title VII, a plaintiff must either have direct evidence of

retaliation, or proceed through the *McDonnell Douglas* framework, making a prima facie case of retaliation by demonstrating "(i) that []he engaged in protected activity, (ii) that h[is] employer took adverse action against h[im], and (iii) that a causal relationship existed between the protected activity and the adverse employment action." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015)(internal quotations and alterations omitted).  Courts have held that, in establishing a prima facie case of retaliation, "a causal connection . . . exists where the employer takes an adverse employment action against an employee shortly after learning of the protected activity." *Silva v. Bowie State Univ.*, 172 Fed. Appx. 476, 478 (4th Cir. 2006)(quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)).

Defendant admits that Plaintiff engaged in a protected activity when he filed his April 10, 2015 EEOC charge.  Without any additional context, the dates on which Plaintiff filed his EEOC charge (April 10, 2015) and Defendant terminated Plaintiff's employment (July 31, 2015) would raise a plausible inference of a link between the two events.  However, Plaintiff's pleadings and the documents attached thereto clearly show both that Defendant had a legitimate reason to terminate Plaintiff's employment, and that Defendant began the process of terminating Plaintiff well before he filed his first EEOC

18

charge. Plaintiff has pled himself into a corner, and there is no longer a plausible basis for believing that his termination was in retaliation for engaging in protected activities. Plaintiff was notified in writing on May 19, 2014 that he would only have 12 months to return to full duty before he would be terminated. (Ex. 3.) In that letter, Plaintiff was warned that if he did not return to work by August 22, 2014 he could face termination. (*Id.*) Then, on March 27, 2015, Plaintiff was notified that his injury leave allotment would expire on April 9, 2015, and that after that date he would have to use his personal leave until that was exhausted, at which point the County would no longer pay him. (Ex. 8.) All of this was pursuant to established County policy. Plaintiff received both of these letters prior to filing his EEOC charge.

The facts alleged in Plaintiff's complaint and as appearing in the documents attached thereto show that Defendant was planning to terminate Plaintiff's employment well before Plaintiff filed his first EEOC charge. Therefore, although Plaintiff's ultimate termination took place shortly after he filed his EEOC charge, Plaintiff cannot plausibly demonstrate that there was a causal relationship between filing his EEOC charge and the termination of his employment.

Additionally, Plaintiff's pleadings show that standing County policy prescribed termination if he was unable to return

to duty.  This policy provides the legitimate, non-retaliatory reason Defendant would need to refute a prima facie case under the *McDonnell Douglas* framework.  Because this defense appears on the surface of the Plaintiff's complaint, the Court may reach it at the Rule 12(b)(6) phase.  *See Goodman*, 494 F.3d at 464.

Plaintiff's pleadings and the attached documents fail to assert facts establishing the plausibility of his allegation of retaliation.  Accordingly, the Court grants Defendant's Motion to Dismiss with respect to Plaintiff's claim for retaliatory discharge.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss.  Plaintiff's complaint is dismissed without prejudice in its entirety.

An appropriate Order shall issue.

/s/
_____
April 26, 2016                                  James C. Cacheris
Alexandria, Virginia          UNITED STATES DISTRICT COURT JUDGE