IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| ANTHONY D. CRAFT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|         v. | )   1:16cv86(JCC/MSN) |
| | ) |
| FAIRFAX COUNTY GOVERNMENT, | ) |
| | ) |
|     Defendant. | ) |

### M E M O R A N D U M   O P I N I O N

This matter is again before the Court on Defendant Fairfax County Government's ("Defendant" or "Fairfax") Second Motion to Dismiss. [Dkt. 23] For the following reasons, the Court grants Defendant's Second Motion to Dismiss and dismisses Plaintiff's Amended Complaint [Dkt. 22] with prejudice.

### I. Background

At the motion to dismiss stage, the Court must read the complaint as a whole, construe the complaint in the light most favorable to the plaintiff, and accept the facts alleged in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts below are taken from Plaintiff's Amended Complaint and the attached documents.[1]

---

[1]   For ease of reference, attached documents are referenced by the exhibit number assigned them by Defendant. However, all of Defendant's exhibits are drawn from the over 1,300 pages of documents attached to Plaintiff's complaint.

1

Plaintiff Anthony Craft ("Craft" or "Plaintiff") was employed by the Fairfax County Fire and Rescue Department ("FRD") as a firefighter until July 31, 2015. (Am. Compl., ¶¶ 7, 21.) On August 22, 2013, Plaintiff suffered a work related back injury from slipping and falling on a wet boat dock while performing his duties as a firefighter. (*Id.* at ¶ 8.) On August 30, 2013, Plaintiff visited My Urgent Care, a physician approved by Fairfax County to handle Worker's Compensation eligible claims. (*Id.* at ¶ 9.) Plaintiff saw My Urgent Care again on September 6, 2013 for a follow up appointment and to start physical therapy. (*Id.*) On September 13, 2013, Plaintiff visited Primary Care Physician, "due to persistent back pain and worker's comp physician recommending Craft back to work 'light duty no restrictions.'" (*Id.* at ¶ 10.) Plaintiff alleges that Defendant offers no such light duty for firefighters in his situation. (*Id.*) Yet Plaintiff also alleges that on October 7, 2013, he "returned to work light duty" in an unspecified role. (*Id.* at ¶ 11.)

Around this same time, Plaintiff began a second physical therapy program with Kaiser Permanente that lasted approximately 4-6 weeks. (*Id.*) On November 5, 2013, Dr. Ian Gordon of Kaiser Permanente recommended that Plaintiff be taken out of work completely due to continued back pain, and scheduled Plaintiff for his first MRI. (*Id.*) On November 13, 2013,

2

Plaintiff saw Dr. Alan Schreiber, a worker's compensation physician, and received documents recommending he not work until after the MRI results. (*Id.* at ¶ 12.) On December 23, 2013, Jaunuary 13, 2014, and February 14, 2014, Plaintiff received epidural injections in his lower back due to a herniated disc between his L4 and L5 vertebrae. (*Id.*) On April 4, 2014, Plaintiff underwent surgery at Med Star Southern Maryland Hospital to remove the herniated disc. (*Id.* at ¶ 13.) In May of 2014 Plaintiff began post-operative physical therapy. (*Id.*)

On May 19, 2014, Deputy Fire Chief Daniel V. Gray's office called Plaintiff to Fire Headquarters to discuss his work status. (*Id.*) At the time of this meeting, Dr. Schrieber had "ordered Plaintiff off work completely." (*Id.*) When Plaintiff arrived at FRD Headquarters, he was given a memo with six options to choose from regarding his future employment with Defendant. (*Id.*) Plaintiff argues that he could have been mailed this memo, and requiring him to come to Fire Headquarters while he was still "ordered off" of work by his physician was "harassment" and "total disregard for the physician's orders." (*Id.*)

At some point thereafter, Plaintiff was awarded workers' compensation by the Virginia Workers' Compensation Commission. (*Id.* at ¶ 14.) On July 30, 2014, Plaintiff informed Deputy Chief Gray that he would be pursuing referral to

3

the Uniformed Retirement Board ("the Retirement Board") for service-connected disability retirement. (*Id.* at ¶ 15.) On August 6, 2014, Plaintiff submitted his formal application for disability retirement with the Fairfax County Retirement Agency (the "Agency") after Dr. Schreiber stated he could no longer perform the duties of a firefighter. (*Id.* at ¶ 16.) On August 7, 2014, The Agency sent a memorandum to the Office of Risk Management requesting medical documents relating to Plaintiff's claim of disability. (*Id.* at ¶ 17.)

On April 10, 2015, Plaintiff filed his first charge with the Equal Employment Opportunity Commission ("EEOC") alleging that delays in processing his retirement application constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Americans with Disability Act, 29 U.S.C. § 623(a)(1) ("ADA"). (*Id.* at ¶ 18.) Plaintiff now alleges that at the time he submitted this claim he was being subjected to "discrimination, bullying, and harassment" by Defendant's employees "stalking the plaintiff in front of his home, harassing phone telephone calls by Captain Pete Pullen and others, and humiliation." (*Id.*)

On May 28, 2015, Plaintiff participated in a Functional Capacity Evaluation, the results of which allegedly confirmed Dr. Schreiber's opinion that Plaintiff could no longer perform the duties of a firefighter. (*Id.* at ¶ 19.) Plaintiff

4

also requested advance sick leave on May 28, 2015, but his request was denied due to his continuing ability to "perform light level work." (*Id.*) On June 26, 2015, Plaintiff received a memorandum via certified letter from Deputy Chief Andrew L. Duke "proposing separation of employment." (*Id.* at ¶ 19.) Plaintiff alleges that "despite [Plaintiff] being able to perform light level work, separation of employment was recommended." (*Id.*) On July 31, 2015, Plaintiff received a letter from Fire Chief Richard Bowers written on July 23, 2015 that informed him the Chief had "decided to approve your separation as proposed effective at the close of business on Friday, July 31, 2015." (*Id.* at ¶ 21.) On September 11, 2015, Plaintiff filed a second EEOC charge alleging retaliatory termination by Defendant.

In October of 2015 Plaintiff received a letter from the Agency informing him that his case was going before the Retirement Board on October 21, 2015. (*Id*. at 23.) On October 21, 2015, Plaintiff and his wife arrived at the location for his meeting with the Retirement Board at 10:00 a.m., but his application was not heard for approximately 2 hours. (*Id.*) Plaintiff now alleges that this was another example of harassment and retaliation. (*Id.*)

On December 9, 2015, Plaintiff received a letter from the Agency informing him that the Retirement Board would render

5

a decision on his disability retirement application on December 16, 2015. (*Id.* at ¶ 24.) On December 17, 2015, Plaintiff was contacted via email by Chris D. Colandene, Deputy Director, Fairfax County Retirement Systems, that the Retirement Board had denied his application for disability retirement. (*Id.*) Plaintiff contends that being forced to wait until December for the Retirement Board's decision after his hearing in November is a further example of harassment, bullying, and retaliation for filing his initial EEOC charge. (*Id.*) On December 28, 2015, Plaintiff sent an email to Chris Colandene informing him of his decision to appeal the Retirement Board's decision. (*Id.* at ¶ 25.) There is no indication regarding the status or disposition of that appeal.

Plaintiff filed this lawsuit on January 27, 2016, after receiving a dismissal and right to sue letter from the EEOC. (Compl., [Dkt. 1].) Plaintiff's original complaint alleged discrimination in violation of Title VII and wrongful termination and failure to accommodate in violation of the ADA. (*Id.*) Defendant filed its First Motion to Dismiss on February 26, 2016, and that motion was granted by this Court on April 26, 2016. (*See* First. Mot. to Dismiss [Dkt. 8]; Mem. Op. of Apr. 26, 2016 [Dkt. 16]; Order of Apr. 26, 2016 [Dkt. 17].) This Court's Order granting Defendant's First Motion to Dismiss provided that "Plaintiff shall file an Amended Complaint, if

6

any, no later than May 5, 2016." (Order of Apr. 26, 2016 at 3.)

Plaintiff filed a Motion for Extension of Time on May 5, 2016. (Pl.'s Mot. for Ext. of Time [Dkt. 18].) The Court granted Plaintiff's Motion for Extension of Time in part, ordering that "Plaintiff is granted an additional 20 days from the date of this order to file an Amended Complaint, if any; Plaintiff shall file an Amended Complaint, if any, no later than May 30, 2016; If Plaintiff fails to file an Amended Complaint by May 30, 2016, his Complaint will be dismissed with prejudice." (Order of May 10, 2016 [Dkt. 19] at 2-4.) Plaintiff failed to comply with this Order, first filing a Second Motion for Extension of Time on May 27, 2016, and then filing his Amended Complaint on June 2, 2016. (Pl.'s Sec. Mot. for Ext. of Time [Dkt. 21]; Am. Compl.) Plaintiff's Amended Complaint repeats his claims for failure to accommodate in violation of the ADA, and further alleges retaliation and creation of a hostile work environment in violation of Title VII. (Pl.'s Am. Compl., ¶¶ 27-32.)

On June 13, 2016, Defendant filed the instant motion, its Second Motion to Dismiss with an attached *Roseboro* notice to Plaintiff. (Def.'s Sec. Mot. to Dismiss [Dkt. 23].) Plaintiff has failed to file any opposition to Defendant's Second Motion to Dismiss. Oral argument was heard on July 14, 2016, at which point Plaintiff appeared and contested Defendant's Second Motion

7

to Dismiss. The motion is now ripe for decision.

## II. Legal Standard

Defendant moves to dismiss under Federal Rules of Civil Procedure 41(b), 12(b)(1), and 12(b)(6).

Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Failure to comply with a Court ordered filing deadline is a valid basis for dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(b). *See Bryan v. Bristol-Myers Squibb Co.*, 588 F. App'x 273 (4th Cir. 2014)(per curiam opinion upholding dismissal for failure to comply with court order and timely file objections to Magistrate Judge's report and recommendation).

Defendant alternatively moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject matter

jurisdiction over the pending action. "Federal courts are courts of limited jurisdiction, and we presume that a cause lies outside this limited jurisdiction. The burden of establishing the contrary rests upon the party asserting jurisdiction." *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 583-84 (4th Cir. 2012) (citation omitted). If "claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Dennis v. County Of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). In order for a plaintiff to have exhausted his administrative remedies, "the factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

   Finally, Defendant moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (citation omitted) (internal quotation marks omitted). While the court must accept well-pleaded allegations as true when ruling on a Rule 12(b)(6) motion, the court need not accept as true legal conclusions

disguised as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009).  Therefore, a pleading that offers only a "formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement."  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

In the context of discrimination claims, "while a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, *see Swierkeiwicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002), '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012)(quoting *Twombly*, 550 U.S. at 555).  Where sufficient facts are alleged in the complaint to rule on an affirmative defense, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).  This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint*."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (emphasis in original); *see also* 5B Wright & Miller, Federal Practice & Procedure § 1357.

In considering a motion to dismiss, a court is limited to considering the pleadings, documents attached to the pleadings, documents integral to, relied on, or referenced to within the pleadings, and official public records pertinent to the plaintiff's claims. *See Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

### III. Analysis

A. Defendant's Rule 41(b) Motion

Plaintiff has failed to comply with this Court's Order of May 10, 2016 by failing to file his Amended Complaint by May 30, 2016. The Order of May 10, 2016 provided Plaintiff with 20 *additional* days to file his Amended Complaint, and clearly informed Plaintiff that "[i]f Plaintiff fails to file an Amended Complaint by May 30, 2016, his Complaint *will be dismissed with prejudice*." (Order of May 10, 2016 at 4.)(emphasis added) While Plaintiff is proceeding *pro* se and is therefore entitled to more liberal pleading and procedural standards, this order complied with the notice requirements of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) by informing Plaintiff in plain, clear language that failure to comply with that deadline would result in the dismissal of his claims with prejudice. The Plaintiff filed a Second Motion for Extension of time on May 27,

2016, but this Motion was not granted, and the mere filing of the Second Motion for Extension of Time did not entitle Plaintiff to disregard the deadline established in the May 10, 2016 Order.[2] Because Plaintiff has failed "to comply with a court order" establishing a deadline by which he must have filed his Amended Complaint, the Court grants Defendant's Second Motion to Dismiss pursuant to Federal Rule of Civil Procedure 41(b) and dismisses Plaintiff's Amended Complaint with prejudice. Fed. R. Civ. P. 41(b).

    B.    Defendant's Rule 12(b)(1) and Rule 12(b)(6) Motions

As an alternative grounds for dismissal, and because *pro se* complaints are "to be liberally construed", the Court will now proceed to evaluate the merits of Plaintiff's Amended Complaint in light of Defendant's Rule 12(b)(1) and Rule 12(b)(6) motions as though it had been timely filed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Settlers Crossing, L.L.C. v. U.S. Home Corp.*, 383 F. App'x 286, 288 (4th Cir. 2010) (affirming district court's finding of lack of subject matter jurisdiction

---

[2] The May 10, 2016 Order had already explicitly refused a requested extension of time past May 30, 2016. The clear implication therein was that no further extensions past May 30, 2016 would be granted. Any reliance by Plaintiff on his May 27, 2016 Second Motion for Extension of Time was therefore particularly misplaced.

and alternative dismissal on the merits); *Foxworth v. United States*, No. 3:13-cv-291, 2013 WL 5652496, at *4-6 (E.D. Va. Oct. 16, 2013) ("Accordingly, even if the Court found jurisdiction to be proper, Foxworth's Complaint fails to state a claim upon which relief can be granted.").

Had Plaintiff timely filed his Amended Complaint, the Court would still grant Defendant's Second Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6). The Amended Complaint contains many of the same defects which led the Court to dismiss Plaintiff's original Complaint. The Court addresses each of the three counts in Plaintiff's Amended Complaint in turn.

### 1.   Failure to Accommodate

Plaintiff has alleged one new fact which could potentially bear on his failure to accommodate claim. Plaintiff still explicitly alleges in his Amended Complaint that he sought retirement on the basis that "he could no longer perform the duties as a firefighter," but he now also alleges that he could have performed "light level work." (Am. Compl., ¶¶ 16, 19.) Notwithstanding the new allegation that he could perform light level work, the fact that Plaintiff still alleges he was physically incapable of performing the job "as a firefighter" remains fatal to Plaintiff's failure to accommodate claim. He still has not alleged that he would have been capable of performing the duties of a firefighter with any reasonable

13

accommodations.  Plaintiff's allegation that he could perform "light level work" is insufficient to save his ADA claim as the "ADA does not require an employer to assign an employee to 'permanent light duty . . ..'"  *Shin v. Univ. of Md. Med. Sys. Corp.*, 369 F. App'x 472, 479 (4th Cir. 2010).

Plaintiff alleges no other new facts that would significantly alter this Court's analysis of Plaintiff's ADA claims in its prior Memorandum Opinion granting Defendant's First Motion to Dismiss.  The Court therefore relies upon the above analysis and the previous analysis found in its Memorandum Opinion of April 26, 2016 and would grant Defendant's Second Motion to Dismiss with respect to Plaintiff's ADA failure to accommodate claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 2.   Title VII: Hostile Work Environment

Before bringing a federal claim under Title VII, a plaintiff must exhaust his administrative remedies with the EEOC.  *See Chacko*, 429 F.3d at 508.  In the context of Title VII claims, exhaustion requires a plaintiff to file a charge with the EEOC within the timeframe specified by 42 U.S.C. § 2000e-5(e)(1).  "Even after a plaintiff has exhausted his administrative remedies, the administrative framework plays a substantial role in focusing the formal litigation it precedes."  *Id.*, at 509.  Any subsequent federal lawsuit can advance only

14

those claims stated in the EEOC charge, claims reasonably related to the charge, and claims developed by a reasonable investigation of the charge. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996); *see also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013). If "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Dennis,* 55 F.3d at 156. The "touchstone" of this analysis "is whether plaintiff's administrative and judicial claims are reasonably related." *Syndor v. Fairfax County, Va.*, 681 F.3d 591, 595 (4th Cir. 2012). These requirements advance important policy objectives of notifying the employer and facilitating efficient claim resolution by the EEOC. *See Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000). While exhaustion is important, it "should not become a tripwire for hapless plaintiffs." *Syndor*, 681 F.3d at 594; *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008).

Plaintiff's Amended Complaint alleges for the first time that he was subject to discrimination through creation of a hostile work environment because the County's employees "stalked [him] in front of [his] house," and he received "harassing phone telephone calls by Captain Pete Pullen and others, and

15

humiliation." (Am. Compl., ¶ 18.) Neither of Plaintiff's EEOC charges made any allegations of stalking, harassing telephone calls, or "humiliaition." Plaintiff's April 10 EEOC charge alleges that Defendant was engaged in discrimination against Plaintiff by failing to "send [his] application to the Medical Examining Board" for a period of eight months, thus "intentionally delaying [his] application for retirement and medical coverage due to [his] race, sex, and disability status." (Pl.'s Ex. 5 [Dkt. 1-12], at 15-16; Def.'s Ex. 17 [Dkt. 9-17] at 1-2.) The April 10 EEOC charge also contains allegations of disparate treatment by the retirement board as compared to its handling of the retirement applications of two white firefighters, Mark Johnson and Colleen Wheeler. (Pl.'s Ex. 5, at 12, 14.) Plaintiff's new allegations of stalking and harassment are in no way related to the allegedly disparate, discriminatory, and deficient processing of Plaintiff's application for disability retirement, nor would an investigation into the delayed processing of Plaintiff's retirement application be expected to uncover evidence of stalking, harassment, or systematic humiliation.

Plaintiff's September 11, 2015 EEOC charge predominantly deals with Defendant's allegedly retaliatory termination of Plaintiff. (*Id.*, at 3.) The September 11, 2015 EEOC Charge makes an oblique reference to a "Justin Cuffee" and

16

a "Dawn Kearns" who plaintiff believes received the same treatment of unspecified "Harassment." (*Id.*, at 4.) Plaintiff's September 11, 2015 charge makes no other mention of harassment, humiliation, or stalking, and it makes no reference to Captain Pete Pullen. It clearly states that Plaintiff's claim was for retaliation based on the fact that he was "fired while tolling [sic] due to work related injury." (*Id.*, at 3.) No reasonable investigation into Plaintiff's claim that he was fired in retaliation for filing his April 10, 2015 EEOC Charge would include an investigation into as yet unalleged claims of stalking and harassment by an individual who had not been named in any filings at the time. Accordingly, the Court finds that Plaintiff has failed to exhaust his administrative remedies in connection with his newly alleged claims of stalking, harassment, and humiliation, and the Court would therefore dismiss Plaintiff's claims dependent on these allegations for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

### 3. Title VII: Retaliation

Plaintiff's Amended Complaint contains no new facts which materially alter this Court's prior analysis of his Title VII retaliation claim. As the Court held in its Memorandum Opinion of April 26, 2016, "[t]he facts alleged in Plaintiff's complaint and as appearing in the documents attached thereto

17

show that Defendant was planning to terminate Plaintiff's employment" and "began the process of terminating Plaintiff well before he filed his first EEOC charge." (Mem. Op. of April 26, 2016, at 18-19.) Likewise, Plaintiff's admission that "he could no longer perform the duties as a firefighter" makes it clear on the face of his complaint that Defendant had a legitimate reason to terminate Plaintiff's employment, one which pre-dated Plaintiff's EEOC claims and coincided with the beginning of the process of terminating Plaintiff. (Am. Compl., ¶ 16.)

To the extent that Plaintiff alleges retaliation by "creating a hostile work environment," this claim, like Defendant's stand-alone claim for creation of a hostile work environment discussed above must be dismissed as it neither appeared in Plaintiff's EEOC charges, nor is it reasonably related to the claims actually raised in Plaintiff's EEOC charges. It is therefore also procedurally barred.

Accordingly, for the reasons described above and those described in the Court's Memorandum Opinion of April 26, 2106, the Court would grant Defendant's Second Motion to Dismiss with respect to Plaintiff's Title VII retaliation claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

**IV. Conclusion**

For the foregoing reasons, the Court grants Defendant's Second Motion to Dismiss. Plaintiff's Amended Complaint is dismissed with prejudice in its entirety.

An appropriate Order shall issue.

                                                               /s/

August 4, 2016                     James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE